## Cumberland Telephone & Telegraph Company v. Sutton.

(Decided December 2, 1913).

### Appeal from Washington Circuit Court.

Telephone and Telegraph Companies—Action for Failure to Respond to Calls—Instructions.—In an action to recover damages for the alleged negligent failure of a telephone company to respond to calls, and for the mental pain and anguish suffered from loss of advice and service of a physician during the last illness of a child, an instruction authorizing the jury to award punitive damages was erroneous. In such a case the defendant is only liable for compensatory damages.

W. PRATT DALE, BRUTUS J. CLAY and POLIN & POLIN for appellant.

W. C. McCHORD for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming in part and reversing in part.

Appellee, James S. Sutton, resided with his family, consisting of wife and five children, aged from eight months to 14 years, about equal distance between Springfield and Mackville, and about five miles from each. One night in April, 1912, when all the children were bedfast with measles, the youngest was suddenly and seriously taken with membranous croup. Sutton had a telephone in his house connected with the Springfield Exchange, and Dr Thompson who had been frequently in attendance upon his children treating them for measles had telephone connection with Exchange at Mackville. The Springfield and Mackville Exchanges were connected, and both belonged to, and were operated by the appellant company. On the night in question, Sutton feeling the immediate necessity for Dr. Thompson's presence in connection with the sudden illness of this youngest child, after repeated calls to the Springfield Exchange, finally got an answer from the young lady operator, and after complaining of her delay in answering, he informed her that he wanted connection with Dr. Thompson on the Mackville Exchange, and stated to her the sudden illness of the younger child as an explanation of his urgent need of quick connection with the physician. She called the Mackville Exchange, and the operator there, who was a brother of the physician, Dr. Reed Thompson, responded promptly, and before the operator made connection with his brother, the physician, he inquired of Sutton as to the condition of his children, and Sutton informed him about them, and also of the serious turn in the sickness of the youngest child, and had him hurry the call to the physician. The physician answered the call immediately, and learning of the trouble with the child, advised him to resort to some temporary expedients, explaining that he had just returned about 9 p. m. from a long trip to see another patient, and that before he came to see Sutton's child he would like to eat his supper, and for his horse also to eat and rest, and that in thirty minutes he would call Sutton up by phone, and if the child by that time did not show signs of improvement, he would come to see it without further delay.

At the end of the thirty minutes the doctor called the Mackville Exchange for Sutton, and Sutton called the Springfield Exchange for the doctor. The child was growing worse, and both the doctor and Sutton made frequent efforts to get connection with each other over these exchanges all during the night, but did not succeed

until about three o'clock in the morning. At about that time Sutton got a response from the Springfield Exchange, and in this way the doctor learned that the condition of the child had been growing more serious, and then he drove to Sutton's, but found the child beyond recovery, and it died about ten o'clock in the morning.

This is a suit by Sutton to recover damages for the negligent failure of the agents and servants of the company at Springfield and Mackville to respond to the calls of both himself and Dr. Thompson, and for the mental pain and anguish which he suffered from loss of advice, service, consolation and assistance of Dr. Thompson in this last illness of his child.

The Springfield operator denies the occurrence in toto, and the Mackville operator is not introduced as a witness at all, but the evidence of Sutton and Dr. Thompson prove all of the facts above related.

Under the instructions of the court the jury returned a verdict for Sutton, and allowed him $250.00 as compensatory damages, and $500 as punitive damages.

Appellant complains that over its objection Dr. Thompson was allowed to testify that the next morning he had a conversation with his brother, the Mackville operator, and in which the Mackville operator undertook to justify his failure to respond to the calls the doctor made by saying, that he overheard the conversation between Sutton and the doctor the night before, and in that way he knew the doctor expected to call Sutton in about thirty minutes, and that in order to expedite the call, he left the doctor's line connected on his board with the Springfield Exchange so that when the doctor rang his bell it would ring the Springfield Exchange, and that therefore there was no sound of it at the Mackville Exchange. This evidence, not being a part of the *res gestae*, was incompetent. But we do not think it was prejudicial in this case. The ground of recovery alleged was for the failure of both exchanges to respond, and there was proof to sustain the allegations as to each. If the testimony detailing this conversation with the Mackville operator had any effect, it tended rather to palliate the wrong and excuse the company so far as the Mackville Exchange was concerned. The amount of recovery awarded by the jury also indicates that it had no prejudicial effect on their mind.

The more serious difficulty is presented in appellant's complaint that the lower court gave an instruction

authorizing the jury to award punitive damages, and that thereunder appellee recovered $500.00. Under the rulings of this court this was error. In the case of the Western Union Tel. Co. v. Cross's Admr., 116 Ky., 5, this court held:

"That in a case like this, based wholly upon a breach of contract, unattended with any physical injury, the defendant is (not) liable for anything more than compensatory damages; and we think the trial court erred in giving the instruction on gross negligence, authorizing the infliction of punitive damages."

Upon a petition for a rehearing, the court gave further consideration to that question, but in the following language adhered to "our ruling that on the facts of this case no instruction on punitive damages should have been given. The numerical weight of authority is against the allowance of substantial damages for the non-delivery of social telegrams. By reason of the peculiar character of the action, we are unwilling to extend the rule heretofore laid down so as to allow punitive damages in this class of actions."

We cannot distinguish in principle the case at bar and the one above cited. They are both *ex contractu*, and the same rule of service and responsibility applies alike to telephone and telegraph companies. See L. & N. R. R. Co. v. Scott, 141 Ky., 540, and the authorities therein cited.

We, therefore, affirm the case as to compensatory damages awarded the appellee, but as to punitive damages it is reversed, and the lower court is directed to enter judgment in conformity to this opinion.